**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                      :

LAZARE KAPLAN INTERNATIONAL INC.,    :

                  Plaintiff,    :

            v.    :

                      :    Civil Action No. 1:10-CV-3615-MGC

SWISS RE INTERNATIONAL SE, UK    :
BRANCH, SR INTERNATIONAL BUSINESS    :
INSURANCE COMPANY LIMITED, CERTAIN  :
UNDERWRITERS AT LLOYD'S (Syndicates    :
1414, 2488, 3210, 457, 2001 and 1084), and THE  :
MARINE INSURANCE COMPANY LIMITED,    :
                      :
                Defendants.    :
---------------------------------------------------------------x

### EXCESS POLICY INSURERS'
### ANSWER TO LKI'S THIRD AMENDED COMPLAINT

Defendants denominated as SWISS RE INTERNATIONAL SE/SR INTERNATIONAL BUSINESS INSURANCE COMPANY LIMITED, CERTAIN UNDERWRITERS AT LLOYD'S (Syndicates 1414 and 1084), and THE MARINE INSURANCE COMPANY LIMITED, who severally underwrote shares of excess policy number B0576GLYB472, collectively referred to herein as "Insurers," respond to the Third Amended Complaint of Plaintiff Lazare Kaplan International Inc. ("LKI" or "Plaintiff") as follows.

LKI's Third Amended Complaint contains various headings (collected and repeated in a table of contents) which are understood to be for convenience only and not to constitute substantive allegations. To the extent a response is required to such headings, Insurers deny any and all portions of them inconsistent with the responses provided below.

1.     As to the first sentence of paragraph 1, Insurers deny that LKI has set forth facts showing the "loss or theft" of diamonds and further deny that the losses alleged are insured under the policies at issue in this suit; responding further, Insurers deny that the term "Missing Diamonds" is an accurate description of the diamonds-at-issue and will therefore use the term "diamonds-at-issue" in this Answer to respond to allegations using the term "Missing Diamonds"; Insurers deny the remaining allegations in the first sentence of paragraph 1. As to the second sentence of paragraph 1, Insurers admit that Lazare Kaplan International Inc. ("LKI") is a diamond manufacturing, distribution and trading company based in New York City that has at times relevant to this action been a publicly-traded company. As to the third sentence of paragraph 1, Insurers admit that between 2007 and 2009, Plaintiff and other entities were involved in certain transactions with respect to the diamonds-at-issue, and deny the remaining allegations in the sentence. As to the fourth sentence of paragraph 1, Insurers admit that LKI has presented copies of documents indicating that certain of the diamonds-at-issue were delivered to third parties and that LKI alleges that, to date, the third parties did not return them or pay for them; responding further, Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegation that all such third-party companies are related to each other; Insurers deny the remaining allegations in the sentence.

2.     Insurers admit that Plaintiff has an insurable interest in those diamonds which it directly owns, deny that Plaintiff has established any other type of insurable interest the diamonds-at-issue and deny the remaining allegations in paragraph 2.

3.     Insurers admit that they subscribed to certain of LKI's insurance policies, the terms of which speak for themselves. Responding further, those policies are B0576GLYA472

(the "Primary Policy") and B0576GLYB472 (the "Excess Policy") and are referred to in this Answer as the "Block Policies" and by LKI in the Third Amended Complaint as the "Global Policies." Insurers deny that the Block Policies annexed as Exhibits "A" and "B" to the Third Amended Complaint are complete and accurate copies of the policies in place at the alleged time of loss in that, among other things, those policies incorporate multiple Endorsements LKI omitted from the exhibits to its pleading, and the copies attached to LKI's pleading contain handwriting and other alterations that do not form a part of those contracts. Insurers deny the remaining allegations in paragraph 3.

4.      As to the first sentence of paragraph 4, Insurers deny that LKI's selective, altered quotation accurately conveys the terms of the Block Policies, deny that what LKI purports to quote is quoted accurately, and, responding further, incorporate by reference the full terms, conditions and limitations of the Block Policies. As to the second sentence of paragraph 4, Insurers admit that the Primary Policy provides separate "Fidelity" coverage, deny that the Excess Policy provides separate coverage against loss due to infidelity, and, responding further, incorporate by reference the full terms, conditions and limitations of the Block Policies in their entirety including, but not limited to the Fidelity provision in the Primary Policy. As to the third sentence of paragraph 4, Insurers admit that the Block Policies incepted on March 1, 2006 and terminated three years from that date, and, responding further, incorporate by reference the full terms, conditions and limitations of the Block Policies and the parties' negotiation of and agreements about those placements. Responding further to paragraph 4, Insurers deny the remaining allegations in paragraph 4.

5.      Insurers admit that LKI, through its broker, in or about April 2009, identified the
potential for a commercial dispute between it and certain other entities involving certain
of the diamonds-at-issue and that at a later point in time, LKI said it intended to give
notice of a claim under the Block Policies. Responding further, Insurers deny the
remaining allegations in paragraph 5.

6.      Insurers admit that, via correspondence dated May 3, 2010, they set out the basis for
determining that LKI had not established a valid claim for coverage under the Block
Policies in connection with the diamonds-at-issue.  To the extent LKI seeks to allege
more in paragraph 6, Insurers deny those allegations.

7.      Insurers acknowledge that Plaintiff seeks a declaratory judgment and damages with
respect to the Block Policies, and deny that such claims have merit.  Responding further,
Insurers incorporate by reference the full terms, conditions and limitations of the Block
Policies.  To the extent LKI seeks to allege more in paragraph 7, Insurers deny those
allegations.

8.      Insurers acknowledge that Plaintiff seeks a declaratory judgment and damages with
respect to an interim agreement, the terms of which speak for themselves, and deny that
such claims have merit.  Responding further, Insurers admit that the interim agreement
and the February 24, 2010 amendment thereto (the "Interim Agreement") are accurately
reproduced in Exhibit "C" to the Third Amended Complaint.  To the extent LKI seeks to
allege more in paragraph 8, Insurers deny those allegations.

9.      Insurers acknowledge that Plaintiff seeks damages and specific performance in
connection with a written confidentiality agreement, the terms of which speak for

- 4 -

themselves, and deny that such claims have merit. Responding further, Insurers admit
that the Confidentiality Agreement is accurately reproduced in Exhibit "D" to the Third
Amended Complaint.

10. Insurers deny that they failed to honor their obligations under the Block Policies or
otherwise. Responding further, Insurers admit that LKI is a diamond manufacturing,
distribution and trading company based in New York City and has been engaged in those
activities for a number of years. Responding further, Insurers admit that LKI was listed
on the American Stock Exchange ("AMEX") for a period of time and was de-listed in
August 2010, and incorporate their response to paragraph 177, below. Responding
further, Insurers deny knowledge or information sufficient to form a belief as to the truth
of the remaining allegations in paragraph 10.

11. Insurers deny that LKI's selective, altered quotations from multiple sections of the Block
Policies accurately conveys the terms of the Block Policies and responding further,
incorporate by reference the full terms, conditions and limitations of the Block Policies.

12. Insurers admit that LKI has presented documentation indicating that certain of the
diamonds-at-issue were owned by LKI and that certain others of the diamonds-at-issue
were owned by Lazare Kaplan Belgium N.V. ("LKB"). Responding further, Insurers
admit that LKI's allegations regarding the diamonds-at-issue said to be owned by LKI
and the diamonds-at-issue said to be owned by LKB total approximately $42 million, and
deny that the documentation establishes a covered insurance claim. Responding further,
on the current record, Insurers deny knowledge or information sufficient to form a belief

as to the truth of the allegation that LKB is a wholly-owned subsidiary of LKI. Insurers deny the remaining allegations in paragraph 12.

13.   Insurers admit that Plaintiff engaged in the buying and selling of rough diamonds. Insurers deny that Gulfdiam is an affiliated company of LKI and, responding further, state that LKI has represented to the Court that it does not control Gulfdiam and would bar Gulfdiam from making a claim under the Block Policies if Gulfdiam appeared in this litigation, and that the "Dubai Trading Shareholders Agreement (in relation to Gulfdiam DMCC)" dated May 16, 2006, as provided to Insurers by LKI defines "affiliate" in terms that do not include a non-controlling, indirect investor. Insurers admit that LKI has presented certain documentation indicating that Pinnacle Ltd. holds an approximately 30% investment stake in Gulfdiam and that Gulfdiam is a Dubai corporation. Responding further, on the current record, Insurers deny knowledge or information sufficient to form a belief as to the allegations regarding any corporate relationship between LKI, Serenity 2 Ltd. and Pinnacle Ltd. or whether any such relationship would qualify Serenity and Pinnacle as subsidiary companies of LKI's. Insurers admit that LKI's allegations regarding the diamonds-at-issue said to be owned by Gulfdiam total approximately $94 million, and deny that the documentation establishes a covered insured claim. Insurers admit that LKI is limiting any recovery with respect to Gulfdiam's diamonds to the extent of its own interest, if any, in those diamonds and deny that LKI has established any such interest. Insurers deny the remaining allegations in paragraph 13.

14.   On the current record, Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding Paxco or LKI's interest therein. Insurers

- 6 -

acknowledge that certain of LKI's allegations in the Third Amended Complaint relate to diamonds that LKI has describes as part of something it terms "China Diamonds Business." Insurers admit that LKI is limiting any recovery with respect to such diamonds to the extent of its own interest, if any, in those diamonds and deny that LKI has established any such interest. Insurers deny the remaining allegations in paragraph 14.

15. As to the first sentence of paragraph 15, Insurers deny the truth of the allegations. As to the second sentence of paragraph 15, Insurers admit that LKI is limiting all claims asserted in the Third Amended Complaint to those based only on LKI's pecuniary and economic interests, if any, in the diamonds-at-issue and not the interests of any other company, and deny that LKI has established any such interest as to diamonds-at-issue owned and traded by others.

16. Insurers deny the truth of the allegations in paragraph 16.

17. Insurers admit that LKI has provided copies of certain documents with respect to consignment and sale of certain diamonds-at-issue which contained conditions relating to receipt of full payment, which are in writing and speak for themselves. Insurers deny knowledge or information sufficient to form a belief as to the truth of any allegations in paragraph 17 beyond what is shown in the documents provided.

18. Insurers acknowledge that LKI has segregated its claims with respect to the diamonds-at-issue into four distinct categories, to which LKI has applied the labels: (1) Informal Sector Diamonds; (2) Sight Rough Diamonds; (3) Formal Sector Gulfdiam Diamonds;

and (4) Formal Sector China Diamonds. Any remaining allegations in paragraph 18 are denied.

19. Insurers admit that LKI has provided copies of documentation with respect to its purchase of certain diamonds in the "Informal Sector" and "Sight Rough" categories of its claims. Allegations in paragraph 19 inconsistent with that documentation are denied.

20. Insurers admit that LKI has provided documentation relating to certain transactions by LKI and/or LKB with respect to the diamonds-at-issue in the "Informal Sector" and "Sight Rough" categories of LKI's claims. Allegations in paragraph 20 inconsistent with that documentation are denied.

21. Insurers admit that LKI has provided certain documentation stating that certain of the transactions involving the diamonds-at-issue in the "Informal Sector" and "Sight Rough" categories were conducted by or through LKB. Insurers deny that the documentation is sufficient to establish an insurable interest in the diamonds-at-issue or a "direct pecuniary loss" to LKI. Insurers deny the truth of the remaining allegations in paragraph 21.

22. Insurers deny the truth of the allegations in paragraph 22.

23. Insurers admit that available records indicate that Gulfdiam had a line of credit with ABN AMRO Bank N.V. ("ABN"). Responding further, Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 23.

24. Insurers admit that available records indicated that LKI guaranteed payment to ABN of certain of Gulfdiam's indebtedness to that entity, and documents that LKI has filed with

the U.S. Securities and Exchange Commission ("SEC") indicated that LKI paid $5,073,402.01 to ABN as part of a settlement which addressed, among other things, satisfaction of LKI obligations under the Guaranty. Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24.

25.    Insurers deny that the allegations in paragraph 25 to the extent they are inconsistent with the documents that LKI has filed with the SEC relating to the terms of its settlement with ABN. Responding further, Insurers deny knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 25.

26.    As to the first sentence of paragraph 26, Insurers deny the truth of the allegations. As to the second sentence of paragraph 26, Insurers deny knowledge or information sufficient to form a belief as to the contents of LKI's books and records, which LKI has not yet produced. As to the third sentence of paragraph 26, Insurers deny that LKI has established that the diamonds-at-issue were physically lost, deny that LKI itself had any equity in Gulfdiam, deny that there were covered losses that should have been paid under the Block Policies and were not, and deny the truth of the remaining allegations in the sentence. As to the fourth sentence, Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegation that Gulfdiam is no longer operational.

27.    As to the first sentence of paragraph 27, on the current record, Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegation that LKI had an economic interest in diamonds that were purchased by the "China Diamonds Business." As to the second sentence of paragraph 27, Insurers admit that LKI has provided certain documentation relating to diamond transactions involving Gemport DMCC ("Gemport"),

a Dubai company, and deny the truth of the remaining allegations in that sentence. As to the third sentence of paragraph 27, Insurers admit that LKI limits any recovery it seeks with respect to diamonds described in paragraph 27 to the extent of LKI's own interest in those diamonds, if any.

28.     Insurers admit that LKI has provided copies of certain invoicing and other documentation regarding certain transactions with respect to the diamonds-at-issue during 2008, and demands of payment with respect to certain of those diamonds. Responding further, Insurers state that with respect to certain of the "informal sector" diamonds-at-issue, LKB reportedly is suing third parties alleging that payment is owed, and, on information and belief, third parties deny those allegations. On the current record, Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 28.

29.     Insurers admit that LKI has conducted certain investigation regarding the diamonds-at-issue and how they were traded. Insurers deny that LKI would be entitled to recover or obtain payment from the entities that received certain of the diamonds-at-issue. Responding further, Insurers incorporate by reference their answer to paragraph 28 with respect to pending litigation against third parties. Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 29.

30.     Insurers admit that LKI, through its broker, in or about April 2009, identified the potential for a commercial dispute between it and certain other entities involving the diamonds-at-issue and that at a later point in time, LKI said it intended to give notice of

claim under the Block Policies. Responding further, Insurers deny the remaining allegations in paragraph 30.

31. Insurers deny the truth of allegations in paragraph 31.

32. Insurers admit that, with the exception of certain provisions which specify otherwise, the Block Policies state that they "shall be governed by and construed in accordance with the laws of the State of New York." Insurers further admit that disputes over the terms of the Block Policies are subject to the exclusive jurisdiction of the courts of New York. Insurers respond further, incorporating by reference the full terms, conditions and limitations of the Block Policies.

33. Insurers admit that the quoted words appear in the Block Policies, deny that the excerpt accurately states the "Perils Insured Against" under the Block Policies and, responding further, incorporate by reference the full terms, conditions and limitations of the Block Policies.

34. Paragraph 34 sets forth legal argument and conclusions to which a response is not required. To the extent a response is required, the Insurers respond as follows. As to the first sentence of paragraph 34, Insurers deny that "all risks" is a complete and accurate description of the scope of insurance under the Block Policies, and, responding further, incorporate by reference the full terms, conditions and limitations of the Block Policies and the parties' negotiation of, agreements about and representations regarding those placements. As to the second sentence of paragraph 34, Insurers deny the truth of the allegations and, responding further, incorporate by reference the full terms, conditions and limitations of the Block Policies.

35.     Paragraph 35 sets forth legal argument and conclusions to which a response is not required. To the extent a response is required, the Insurers respond as follows. Insurers admit that the Block Policies do not contain a definition of the words "physical loss and/or damage," deny that a definition is required to comprehend the plain meaning of that phrase, deny the remaining allegations in paragraph 35 and, responding further, incorporate by reference the full terms, conditions and limitations of the Block Policies.

36.     Insurers admit that the Primary Policy contains a "Basis of Valuation" provision which contains, in subsection (iv), the language quoted with reference to the method for measuring valuation after coverage is established under another policy provision, and responding further, incorporate by reference the full terms, conditions and limitations of the Block Policies.

37.     Paragraph 37 sets forth legal argument and conclusions to which a response is not required. To the extent a response is required, the Insurers respond as follows. Insurers admit that the Block Policies contain multiple provisions that specify requirements that must be met to establish coverage, and that these requirements are in addition to the other agreements of the parties with respect to, e.g., the scope of coverage and dollar amount of coverage. Responding further, Insurers deny that LKI has presented any claim based on the hypothetical scenario alleged in this paragraph, and deny any remaining allegations in paragraph 37.

38.     Insurers deny that the facts alleged constitute "physical loss," deny that LKI's insurance claims are based on physical loss, and, responding further, deny knowledge or

information sufficient to form as belief as to the truth of the remaining allegations in paragraph 38.

39. Insurers admit that they, along with LKI, entered into a Confidentiality Agreement effective December 23, 2009 and incorporate the full terms and conditions of that Confidentiality Agreement and subsequent written modifications to that Confidentiality Agreement.

40. Insurers admit that they, along with LKI entered into an Agreement for Interim Payment effective December 31, 2009 and amended on February 24, 2009, deny that the allegations in this paragraph accurately and completely summarize the terms and conditions of those documents, and incorporate herein the full terms and conditions of those documents.

41. Insurers deny that the allegations in this paragraph accurately and completely summarize the terms of the Interim Agreement which, among other things explicitly provides that the "Interim Payment shall not be construed as an admission of coverage" and that "Underwriters reserve their right to disclaim coverage pursuant to the terms and conditions of its contract of insurance." Responding further, Insurers incorporate herein the full terms and conditions of the Interim Agreement as amended and state that LKI's attempted misuse of the Interim Agreement in this action is directly contrary to the undertakings forming a part of that agreement. Responding further, Insurers admit that they paid to LKI $28 million pursuant to the Interim Agreement and that LKI represented to the Court that the claim at issue in this litigation is net of that $28 million payment and that LKI does not seek any double recovery.

42. Insurers deny the truth of the allegations in paragraph 42.

43. Insurers deny the truth of the allegations in paragraph 43.

44. Insurers admit that letters were sent to LKI on May 3, 2010, setting out coverage positions under the Primary Policy and the Excess Policy, deny that the letters are accurately summarized by LKI and, responding further, incorporate by reference those letters. Responding further, Insurers admit that LKI sought and obtained separate insurance for its Angola rough diamond buying and trading operations under a set of Angola Policies which LKI re-labels here as the "U.K. Policies." Insurers further admit that while certain of them subscribed to LKI's Angola Policies, underwriters comprising Lloyd's syndicates 1414 and 1084 did not. Responding further, Insurers state that LKI has taken the position in this suit that it seeks a judgment against Insurers solely with respect to their participation in the Primary Policy and/or the Excess Policy, and on that basis, that LKI's assertions with respect to the Angola Policies are not properly part of this law suit. Responding further, Insurers admit that LKI and the underwriters of the Angola Policies are litigating LKI's claim in England and state, on information and belief, that LKI accepted jurisdiction in England with respect to that dispute. Responding further, Insurers state that LKI has submitted court papers in England (the details of which are subject to a Confidentiality Order) alleging that the Angola Policies insured in full claims relating to those diamonds-at-issue that involve Angola rough diamond buying and trading operations, and that the Angola Policies are obligated to pay in full for those claims. Insurers deny the truth of any remaining allegations in paragraph 44 inconsistent with the foregoing response.

45.     Insurers deny the truth of the allegations in paragraph 45.  Responding further, Insurers deny that the words in quotation marks are an accurate quotation of the Interim Agreement, and incorporate by reference the full terms and conditions of the Interim Agreement, as amended, including the agreement that the "Interim Payment shall not be construed as an admission of coverage."

46.     Insurers deny the truth of the allegations in paragraph 46.

47.     Insurers deny the truth of the allegations in paragraph 47.

48.     Insurers deny the truth of the allegations in paragraph 48.

49.     Insurers deny the truth of the allegations in paragraph 49.

50.     Insurers deny the truth of the allegations in paragraph 50.

51.     As to the first sentence of paragraph 51, Insurers deny the truth of the allegations.  As to the second sentence of paragraph 51, Insurers admit that Primary Insurers' May 3, 2010 correspondence states "Underwriters have concluded based on the facts in hand that LKI has not met its burden to show that Underwriters are obligated at this time to make a payment under the policy" and incorporate that letter in full, which speaks for itself. Responding further, Insurers state that their May 3, 2010 correspondence undertook to give due consideration to any additional information or support that LKI would in the future provide and, that LKI has not, to date, submitted more material, or confirmed that it has nothing more to provide in support of the claim.  As to the third sentence of paragraph 51, Insurers admit that LKI wrote to them regarding the Confidentiality

Agreement, and deny that LKI has accurately quoted the Confidentiality Agreement in paragraph 51. Any remaining allegations in paragraph 51 are denied.

52. Insurers admit that there was an exchange of correspondence between LKI and Insurers regarding the Confidentiality Agreement in or about May 2010, incorporate the full terms and conditions of that agreement and the correspondence relating thereto, and, responding further, deny any breach of that Confidentiality Agreement by Insurers.

53. Insurers acknowledge that LKI seeks relief in this action and deny that any such claims have merit.

54. Insurers admit that jurisdiction is proper in this Court, except as to those allegations involving rights, obligations or duties pursuant to the Angola Policies, which are subject to an exclusive forum-selection clause selecting the forum of England and Wales and, further, are the subject of litigation underway in England.

55. Insurers admit that they have consented to the jurisdiction of this Court, except as to those allegations involving rights, obligations or duties pursuant to the Angola Policies, which are subject to an exclusive forum-selection clause selecting the forum of England and Wales and, further, are the subject of litigation underway in England and deny the remaining allegations of paragraph 55.

56. Insurers admit that venue is proper in this Court, except as to those allegations involving rights, obligations or duties pursuant to the Angola Policies, which are subject to an exclusive forum-selection clause selecting the forum of England and Wales and, further, are the subject of litigation underway in England.

57.    Insurers deny that they failed to honor their obligations under the Block Policies or otherwise. Responding further, Insurers admit that LKI is a Delaware corporation based in New York City. Responding further, Insurers admit that LKI was listed on the American Stock Exchange ("AMEX") for a period of time and was de-listed in August 2010, and incorporate their response to paragraph 177, below. Responding further, Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 57.

58.    Insurers admit that Swiss Re International SE (f/k/a SR International Business Insurance Company SE, f/k/a SR International Business Insurance Company plc, f/k/a SR International Business Insurance Company Ltd.) ("Swiss Re") underwrote a share of the primary and excess insurance policies that are the subject of this lawsuit. Insurers admit that Swiss Re has subscribed to certain other LKI insurance policies in the past. Insurers admit that Swiss Re is not domiciled in New York or in the U.S., and, responding further, state that it was at all times relevant to this suit qualified as an eligible Excess Line Insurer in New York. Insurers deny the truth of the remaining allegations in paragraph 58.

59.    Insurers admit that certain underwriters at Lloyd's denominated Syndicates 1414, 2488, 3210, 457, 2001 and 1084 underwrote shares of the primary and excess insurance policies that are the subject of this lawsuit. Insurers admit that certain of the underwriters at Lloyd's denominated Syndicates 1414, 2488, 3210, 457, 2001 and 1084 have subscribed to certain other LKI insurance policies in the past. Insurers admit that the certain underwriters at Lloyd's denominated Syndicates 1414, 2488, 3210, 457, 2001 and 1084 are not domiciled in New York or in the U.S. and, responding further, state that they were

at all times relevant to this suit qualified as eligible Excess Line Insurers in New York. Insurers deny the truth of the remaining allegations in paragraph 59.

60.     Insurers admit that the Marine Insurance Company Limited ("Marine") underwrote shares of the one excess insurance policy that is a subject of this lawsuit. Insurers admit that Marine has subscribed to certain other LKI insurance policies in the past. Insurers admit that Marine is not domiciled in New York or in the U.S. and, responding further, state that it was at all times relevant to this suit qualified as an eligible Excess Line Insurer in New York. Insurers deny the truth of the remaining allegations in paragraph 60.

61.     Insurers deny the truth of the allegations in paragraph 61.

62.     Insurers admit that LKI has provided with respect to Gulfdiam a copy of a "Dubai Trading Shareholders Agreement (in relation to Gulfdiam DMCC)", dated May 16, 2006 and, responding further, admit that Gulfdiam was engaged in the business of buying and selling Angola rough diamonds. Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 62.

63.     Insurers admit that LKI has provided certain documentation stating that Serenity, Pinacle and Paxco are Bermuda corporations. Insurers deny that the documentation LKI has provided shows that Serenity owns a 30% interest in Gulfdiam and, responding further reference a contemplated shareholding of 29.10%. On the current record, Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations regarding Serenity, Pinnacle and Paxco.

64.     Insurers admit that LKI has provided certain documentation stating that LKB is a Belgian corporation and an indirect subsidiary of LKI. Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 64.

65.     Insurers admit that DD and KT deal in rough diamonds, and that LKI alleges that DD and/or KT were involved in certain transactions at issue in this suit, including transactions with respect to Angolan rough diamonds. Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 65.

66.     Insurers admit that LKI has provided documentation stating that Mauridiam is the controlling shareholder of Gulfdiam and responsible for the management of Gulfdiam, and that Mauridiam is incorporated in Mauritius with a registered office at 8th Floor, Max City Building, 21 Remy Ollier Street, Port Louis, Mauritius. Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 66.

67.     Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67.

68.     Insurers admit that LKI has provided a copy of an "Angolan Trading Shareholders Agreement" dated May 2006 showing Paxco, DMD and King as parties. Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 68.

69.     Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69.

70.     Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70.

71.     Insurers deny knowledge or information sufficient to form as belief as to the truth of the allegations in paragraph 71.

72.     Insurers admit that they subscribed to certain of LKI's insurance policies, the terms of which speak for themselves and, responding further, incorporate their responses to paragraphs 3 and 4, above. Insurers deny the remaining allegations in paragraph 72.

73.     Insurers incorporate their response to paragraph 37, above, as though set forth fully herein.

74.     Insurers admit that certain of them subscribed to Policy number B0576GLYA472, the "Primary Policy" and that the Primary Policy incepted March 1, 2006 and terminated February 28, 2009.

75.     Insurers admit that the words quoted appear in the Primary Policy, albeit without the emphasis added in LKI's pleading and, responding further, incorporate by reference the full terms, conditions and limitations of the Primary Policy, and their answer to paragraph 4.

76.     Paragraph 76 sets forth legal argument and conclusions to which a response is not required. To the extent a response is required, the Insurers admit that the quoted words

appear in the Primary Policy, albeit without the emphasis added in LKI's pleading, along with a phrase later deleted by Endorsement #14 to the Primary Policy.  Responding further, Insurers deny that "all risk" is a complete and accurate summary of the scope of the Primary Policy, deny the absence of provisions limiting the perils insured under the Primary Policy and, responding further, incorporate by reference the full terms, conditions and limitations of the Primary Policy, and their answer to paragraphs 4 and 34.

77.     Insurers admit that the quoted words appear in the Primary Policy, and, responding further, incorporate by reference the full terms, conditions and limitations of the Primary Policy, and their answer to paragraph 4.

78.     Insurers admit that the quoted words appear in the Primary Policy, albeit without the emphasis added in LKI's pleading, and, responding further, incorporate by reference the full terms, conditions and limitations of the Primary Policy, and their answer to paragraph 4.

79.     Insurers admit that the quoted words appear in two separate sections of the Primary Policy, albeit without the emphasis added in LKI's pleading.  Responding further, Insurers deny that the quotes accurately convey the limits of liability of the Primary Policy and incorporate by reference the full terms, conditions and limitations of the Primary Policy, and their answer to paragraph 4.

80.     Insurers admit that Section 1 of the Primary Policy is a "Schedule of Sums Insured and Limits for Premises and Entrustments" and that the language quoted in the second sentence of paragraph 80 of the Third Amended Complaint appears in Section 1(b)(5) of the Primary Policy, albeit with language other than what LKI inserts in brackets.

Responding further, Insurers incorporate by reference the full terms, conditions and limitations of the Primary Policy, and their answer to paragraph 4.

81.   Insurers admit that Section 2.A of the Primary Policy is titled "SENDINGS" and contains the quoted language, and, responding further, incorporate by reference the full terms, conditions and limitations of the Primary Policy (including, but not limited to, the separately-titled Section 2.B), and their answer to paragraph 4.

82.   Paragraph 82 sets forth legal argument and conclusion to which no response is required. To the extent a response is required, Insurers admit that Section 3 of the Primary Policy is titled "FIDELITY" and contains certain of the quoted language, albeit without the emphasis added in LKI's pleading, and deny that LKI has accurately quoted from the "Conditions" portion of Section 3 of the Primary Policy. Responding further, Insurers deny that LKI, which asserted Section 3, FIDELITY of the Primary Policy as an alleged basis for recovery for the first time in its Second Amended Complaint, has satisfied the terms, conditions and limitations of that section, and Insurers incorporate by reference the full terms, conditions and limitations of the Primary Policy. Insurers admit that insurance under Section 3, FIDELITY of the Primary Policy states that the category of "employees" under that section may include employees of D.D. Manufacturing N.V., its associates and subsidiary companies whose actions as natural persons may give rise to a fidelity claim, if the terms, conditions and limitations of that section are satisfied, and Insurers incorporate by reference the full terms, conditions and limitations of the Primary Policy and their answer to paragraph 4. Insurers deny the remaining allegations in Paragraph 82.

83.    Insurers admit that the Primary Policy contains a "Basis of Valuation" provision which contains, in subsection (iv), the language quoted (albeit without the emphasis added in LKI's pleading) with reference to the method for measuring valuation after coverage is established under another policy provision. Responding further, Insurers incorporate by reference the full terms, conditions and limitations of the Primary Policy, and their answers to paragraphs 4 and 36.

84.    Insurers admit that the Primary Policy contains certain exclusions and deny that none of them are applicable to the losses claimed by LKI. Responding further, Insurers incorporate by reference the full terms, conditions and limitations of the Primary Policy, and their answer to paragraph 4.

85.    Paragraph 85 contains legal argument and conclusions to which no response is required. To the extent a response is required, Insurers admit that each insured entity, including LKI, has the right to tender its "own losses" for review under the Primary Policy, and Insurers incorporate by reference the full terms, conditions and limitations of the Primary Policy. Responding further, Insurers admit that LKI has stated in Court that its "own losses" do not overlap with or implicate the interest of any other entity under the Block Policies. Responding further, Insurers deny that what LKI has presented establishes a covered loss under the Block Policies and deny the truth of the remaining allegations in paragraph 85.

86.    Insurers admit that certain of them subscribed to Policy number B0576GLYB472, the "Excess Policy", admit that the Excess Policy provides that it "shall be governed by and

construed in accordance with" New York law, and, responding further, incorporate the full terms, conditions and limitations of the Excess Policy.

87. Insurers admit that the Excess Policy incepted March 1, 2006 and terminated February 28, 2009.

88. Insurers deny that the language quoted is accurately quoted from the Excess Policy and, responding further, incorporate by reference the full terms, conditions and limitations of the Excess Policy, and their answer to paragraph 4.

89. Insurers admit that the language quoted appears in the Excess Policy, and, responding further, incorporate the full terms, conditions and limitations of the Excess Policy.

90. Insurers admit that certain of the quoted words appear in the Excess Policy albeit without the emphasis added in LKI's Pleading. Responding further, Insurers deny that the Excess Policy provides coverage for "*entrustments* [to DD and its subsidiary and associated companies]" as alleged in LKI's pleading and that insurance coverage under the Excess Policy is limited to covered loss of Insured Interest by a Peril Insured Against at specific Named Locations for specific dollar amounts and limits. Insurers incorporate the full terms, conditions and limitations of the Excess Policy, and their answer to paragraph 4.

91. Paragraph 91 contains legal argument and conclusions to which no response is required. To the extent a response is required, Insurers admit that each insured entity, including LKI, has the right to tender its "own losses" for review under the Block Policies Policy, and Insurers incorporate by reference the full terms, conditions and limitations of the Block Policies. Responding further, Insurers admit that LKI negotiated the terms of the

Block Policies and arranged for payment of premiums, and Insurers admit that LKI has stated in Court that its "own losses" do not overlap with or implicate the interest of any other entity under the Block Policies. Responding further, Insurers deny that what LKI has presented establishes a covered loss under the Block Policies, deny that LKI has established that the attachment point of the Excess Policy has been reached, and deny the truth of the remaining allegations in paragraph 91.

92.     Insurers deny that the Block Policies covered all of the operations described in paragraph 92, and, responding further, incorporate the full terms, conditions and limitations of the Block Policies, and their answer to paragraph 4. Insurers admit that the premiums due under the Block Policies have been paid and deny that the provisions were negotiated to insure on the basis LKI alleges in its claim and in this litigation. Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 92.

93.     Insurers admit that the claims for Gulfdiam diamonds and for "China Diamonds Business" diamonds are said to relate to what LKI labels the "Formal Sector." Insurers deny knowledge or information sufficient to form a belief as to the truth of any remaining allegations in paragraph 93.

94.     Insurers admit that LKI had an indirect investment in Gulfdiam. Insurers deny that the "Dubai Trading Shareholders Agreement (in relation to Gulfdiam DMCC)" dated May 16, 2006, as provided by LKI, shows that LKI is required to pay 50% of all costs incurred by what LKI terms the "Formal Sector venture." Responding further on the current record, Insurers state that LKI has not provided support for the allegation and deny

knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 94.

95.    Insurers admit that LKI has submitted a claim for alleged losses that relate to nine shipments by Gulfdiam to third parties in 2008.  Responding further, Insurers admit that the dates recorded for the shipments were during the policy period for the Block Policies, and deny that this establishes that any loss occurred during the policy period for the Block Policies.

96.    Insurers admit that LKI has provided copies of invoices relating to purchases by Gulfdiam of diamonds through Angola buying and trading operations during 2008 and further documentation relating to Gulfdiam's further transactions with respect to those diamonds.   Insurers deny that LKI has provided, or that Insurers otherwise have, knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 96.

97.    Insurers admit that LKI provided copies of certain documents showing Gulfdiam transactions in Angola rough diamonds, and that the quoted language appears (without emphasis) in certain invoices that LKI has made available.  Responding further, Insurers state that LKI has not provided additional support for the allegations in paragraph 97 and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 97.

98.    Insurers admit that LKI has submitted a claim for losses in the amount specified that are said to relate to diamonds that Gulfdiam owned and delivered to Gemport.  Responding further to the second sentence of paragraph 98, Insurers state that it calls for a legal

conclusion to which no response is required. Answering further, Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 98.

99. Insurers incorporate their response to paragraph 98 and deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 99.

100. Insurers admit that the quoted language appears (without emphasis) in certain invoices that LKI has made available. Responding further, Insurers incorporate their answer to paragraph 97 and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 100.

101. Insurers admit that LKI has made certain efforts to investigate Gulfdiam's transactions. Responding further, Insurers incorporate their answer to paragraphs 1, 28 and 29 and deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101.

102. Insurers admit that LKI has provided certain documentation regarding shipments by Gulfdiam to Gemport, ADME and ODHK. Responding further, Insurers incorporate their answers to paragraphs 94-101 and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 102.

103. Paragraph 103 contains legal argument and conclusions to which no response is required. To the extent a response is required, Insurers admit that each insured entity, including LKI, has the right to tender its "own losses" for review under the Block Policies, and Insurers incorporate by reference the full terms, conditions and limitations of the Block

Policies. Responding further, Insurers admit that LKI has stated in Court that what are alleged here to be its "its own pecuniary and economic interests in the Gulfdiam Missing Diamonds" do not overlap with or implicate the interest of any other entity under the Block Policies. Responding further, Insurers deny that what LKI has presented establishes fortuitous physical loss and/or damage of diamonds, deny that what LKI has presented establishes that LKI sustained a covered loss under the Block Policies, and deny the truth of the remaining allegations in paragraph 103.

104. The first sentence of paragraph 104 contains legal argument and conclusion to which a response is not required. To the extent a response is required, Insurers admit that LKI has provided a copy of an "Angola Trading Shareholders' Agreement" showing as parties Paxco, DMD and King, dated May 2006, which is in writing and speaks for itself. Responding further, Insurers state that LKI did not allege the existence of a "China Diamonds Business" until it filed its Second Amended Complaint in this action. Insurers deny that LKI has established the interests alleged and, on the current record, deny knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 104.

105. Insurers admit that LKI has provided certain documentation relating to the purchase of Angola rough diamonds by Gemport and subsequent invoicing of those diamonds. Insurers deny knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 105.

106. Insurers deny that LKI has established an entitlement to 30% of the Angola rough diamonds allegedly purchased by Gemport, described in paragraph 106 as the "China

Diamonds Business." Insurers incorporate their answers to paragraphs 104-106 and deny knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 106.

107.    Insurers admit that LKI has provided copies of certain documentation relating to the purchase of diamonds by Gemport and subsequent invoicing of those diamonds. Insurers deny knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 107.

108.    Paragraph 108 contains legal argument and conclusions to which no response is required. To the extent a response is required, Insurers admit that each insured entity, including LKI, has the right to tender its "own losses" for review under the Block Policies, and Insurers incorporate by reference the full terms, conditions and limitations of the Block Policies. Responding further, Insurers admit that LKI has stated in Court that what is alleged here to be its "its own interest in the China Diamonds Business losses" do not overlap with or implicate the interest of any other entity under the Block Policies. Responding further, Insurers deny that what LKI has presented establishes fortuitous physical loss and/or damage of diamonds, deny that what LKI has presented establishes that LKI sustained a covered loss under the Block Policies, and deny the truth of the remaining allegations in paragraph 108.

109.    Insurers admit that certain of LKI's claims are said to be for diamonds from what LKI has labeled the Informal Sector and Sight Rough. Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 109.

110.    The first sentence of paragraph 110 contains legal argument and conclusions to which a response is not required. To the extent a response is required, Insurers admit that LKI has provided copies of certain documentation stating that it directly owned certain of the diamonds-at-issue that were part of Angola buying and trading operations in the Informal Sector of Angola. Insurers deny knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 110.

111.    Insurers admit that LKI has provided certain documentation relating to its purchase in the Informal Sector of Angola buying and trading operations and shipping of diamonds. Insurers deny knowledge or information sufficient to form a belief as to truth of any remaining allegations in paragraph 111 beyond what the documents show.

112.    Insurers admit that LKI has provided copies of certain transaction notes between LKB and DD and between LKB and KT. Insurers deny knowledge or information sufficient to form a belief as to truth of any remaining allegations in paragraph 112 beyond what the documents show.

113.    Paragraph 113 contains legal argument and conclusions with respect to title that do not require a response. Responding further, Insurers admit that LKI has provided certain invoices between LKB and DD and between LKB and KT, the terms of which speak for themselves. Insurers deny knowledge or information sufficient to form a belief as to truth of any remaining allegations in paragraph 113 beyond what the documents show.

114.    Insurers admit that the quoted language appears in certain invoices that LKI has made available. Insurers deny knowledge or information sufficient to form a belief as to truth of any remaining allegations in paragraph 114 beyond what the documents show.

115.    Paragraph 115 contains legal argument and conclusions to which a response is not
        required. To the extent a response is required, Insurers incorporate their answer to
        paragraph 113 and deny knowledge or information sufficient to form a belief as to the
        truth of the allegations in paragraph 115.

116.    Paragraph 116 contains legal argument and conclusions with respect to title that do not
        require a response. To the extent a response is required, Insurers incorporate their answer
        to paragraph 113, and deny knowledge or information sufficient to form a belief as to the
        truth of the allegations in paragraph 116.

117.    Insurers admit that LKI has provided a copy of certain demand letters from LKB and
        incorporate by reference their answers to paragraphs 28 and 29.

118.    Paragraph 118 contains legal argument and conclusions to which no response is required.
        To the extent a response is required, Insurers admit that each insured entity, including
        LKI, has the right to tender its "own losses" for review under the Block Policies, and
        Insurers incorporate by reference the full terms, conditions and limitations of the Block
        Policies. Responding further, Insurers deny that what LKI has presented with respect to
        "the Informal Sector losses" establishes fortuitous physical loss and/or damage of
        diamonds, deny that what LKI has presented establishes that LKI sustained a covered loss
        under the Block Policies, and deny the truth of the remaining allegations in paragraph
        118.

119.    Insurers admit that LKI has provided certain documentation regarding Sight Rough
        diamonds which LKI consigned to LKB. Insurers deny knowledge or information
        sufficient to form a belief as to the truth of the remaining allegations in paragraph 119.

- 31 -

120.    Paragraph 120 contains legal argument and conclusions with respect to title that do not require a response. To the extent a response is required, Insurers admit that LKI has provided copies of invoices from LKB to DD dated August 31, 2008 and October 30, 2008 for $6,951,419.90 and $6,935,698.58, respectively. Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 120.

121.    Insurers admit that LKI has provided a copy of a demand letter from LKB to DD demanding payment. Insurers incorporate by reference their answers to paragraphs 28 and 29, and they deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 121.

122.    Insurers incorporate by reference their answers to paragraphs 28 and 29, and they deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 122.

123.    Paragraph 123 is not a factual allegation, but a hypothetical statement and a legal conclusion which requires no response. To the extent a response is required, Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123.

124.    Paragraph 124 contains legal argument and conclusions to which no response is required. To the extent a response is required, Insurers admit that each insured entity, including LKI, has the right to tender its "own losses" for review under the Block Policies, and Insurers incorporate by reference the full terms, conditions and limitations of the Block Policies. Responding further, Insurers deny that what LKI has presented with respect to

the Sight Rough transactions (which are the subject of allegations in paragraphs 119-24 of the Third Amended Complaint) fortuitous physical loss and/or damage of diamonds, deny that what LKI has presented establishes that LKI sustained a covered loss under the Block Policies, and deny the truth of the remaining allegations in paragraph 124.

125.   As respects the first sentence of paragraph 125, Insurers admit that LKI provided to its broker a "File Note" dated April 3, 2009 stating that a "commercial dispute has arisen between DD and LK (together with its other partners to the Angola operations." The file note further stated there were disagreements with respect to "accounting schedules" and referenced the dispute as "accounting issues." Responding further, insurers deny that this was notice under the Blocking Policies and deny the truth of any remaining allegations in that sentence. The second sentence of Paragraph 125 contains legal argument and conclusions that do not require a response. To the extent a response is required, Insurers admit that LKI submitted an update to underwriters dated July 15, 2009 that described a suit LKB brought in Belgium against DD and KT, and other aspects of its commercial dispute, concluding with a request for "specific guidance." Responding further, Insurers deny that the losses claimed by LKI in the Third Amended Complaint were timely reported under the Block Policies, deny that LKI made its claims under the Block Policies known to Insurers in or about July 2009, and deny the truth of the remaining allegations in that sentence.

126.   Insurers deny that during the period from April 2009 to July 2009, LKI provided information and documentation regarding the claimed losses. Insurers admit that in late July 2009 certain data and information was provided to Mr. Montalbano and that Mr.

Montalbano was an adjuster acting for the Block Policies.  Insurers deny the truth of the remaining allegations in paragraph 126.

127.  Insurers admit that Montalbano served as an adjuster in connection with other claims involving LKI and/or the Block Policies.  The balance of the allegations contains vague, sweeping generalizations or legal argument and conclusions that do not require an answer.  To the extent an answer is required, Insurers deny on the blanket basis stated the truth of the remaining allegations in paragraph 127.

128.  Insurers deny that Montalbano was removed from investigating the claimed losses, deny that Denise Oliver was retained to "take over Montalbano's role" under the Block Policies and deny the truth of the remaining allegations in paragraph 128.

129.  Insurers deny that Denise Oliver engaged in the alleged conduct on behalf of the Block Policies and deny knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 129 concerning statements allegedly made to LKI.

130.  Insurers deny that Denise Oliver engaged in the alleged conduct on behalf of the Block Policies and deny knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 130.

131.  Insurers admit that LKI provided certain information and participated in certain meetings in the period between its July 2009 request for guidance from Insurers and December 31, 2009, but deny that LKI provided all relevant documents or answered all material questions.  Responding further, deny the truth of the remaining allegations of paragraph 131.

132.    Insurers admit that LKI is a public company and was listed on AMEX in 2009. Insurers deny any breach of their obligations to LKI and deny the truth of the remaining allegations of paragraph 132.

133.    Insurers admit that LKI filed materials with the SEC stating that it received a Deficiency Letter from NYSE Regulation, on behalf of NYSE AMEX LLC dated September 15, 2009, relating to the Company's failure to timely file its Annual Report on Form 10-K for the fiscal year ended May 31, 2009. Responding further, Insurers state that LKI filed materials with the SEC on or about September 16, 2009 stating that its failure to timely file its Form 10-K was as a result of "(a) a material uncertainty concerning the collectability and recovery of certain assets and (b) the Company's potential obligations under certain lines of credit and a guaranty," and did not reference the Block Policies. Responding further, Insurers state that LKI was representing publicly and privately that the cause of its financial condition related to a material downturn in 2008 and 2009 in the luxury goods business in which LKI participates. Insurers deny the truth of any remaining allegations in paragraph 133 inconsistent with the foregoing response.

134.    Insurers admit that LKI filed materials with the SEC on or about October 8, 2009 stating it had submitted to NYSE AMEX LLC on October 7, 2009 a plan, which LKI described as one that "outlines the Company's plan to regain compliance with the Exchange's continued listing requirements." Responding further, Insurers state that no reference was made to insurance claims in LKI's SEC filing disclosing the plan it submitted to NYSE AMEX LCC. Insurers deny knowledge or information sufficient to form a belief as to the content of LKI's submissions to NYSE AMEX LLC beyond the summaries that LKI

has provided in its public SEC filings.  Insurers deny the truth of any remaining allegations in paragraph 134 consistent with the foregoing.

135.  Insurers admit that on or about October 15, 2009, LKI made a demand to them for an assurance that Insurers would accept liability for alleged losses that LKI had or would incur prior to presentation and investigation of its claim, and admit that Insurers did not provide the requested assurance.  Insurers deny that LKI had provided information sufficient to support its demand or that LKI had met the requirements necessary for a coverage determination and deny the truth of the remaining allegations of paragraph 135.

136.  Insurers deny the truth of the allegations in paragraph 136.

137.  Insurers admit that LKI has filed materials with the SEC stating that NYSE Regulation, on behalf of NYSE AMEX LLC, provided notification on November 11, 2009 that it accepted LKI's previously submitted plan of compliance and granted LKI an extension until December 31, 2009 to regain compliance with the Exchange's continued listing standards.  Insurers deny the truth of any remaining allegations in paragraph 137 inconsistent with the foregoing.

138.  Insurers admit that RGL was retained by them for forensic accounting services in connection with LKI's claims under the Block Policies.  Responding further, Insurers admit that RGL sent a letter to LKI on or about November 24, 2009, the content of which speaks for itself.  Insurers deny the truth of the remaining allegations in paragraph 138.

139. Insurers admit that LKI representatives participated in a meeting with RGL and Wade Clark Mulcahy on or about December 23, 2009 to review certain information regarding LKI's claim. Insurers deny the truth of the remaining allegations in paragraph 139.

140. Insurers admit that LKI threatened to commence suit and seek consequential damages if it did not receive a substantial interim payment prior to December 31, 2009, deny the allegation that they wrongfully failed to acknowledge coverage and deny the truth of the remaining allegations in paragraph 140.

141. Insurers deny that any such request was made or that such contractual rights exist under the Block Policies. Responding further, Insurers state that this paragraph is a remnant of an earlier version of the Complaint in which LKI attempted to litigate claims under the Angola Policies, which the Court has said are not part of this case and cannot be litigated as LKI continues to allege in this paragraph. To the extent any further response is required, Insurer deny that the matter in which the investigation of LKI's claims under the Angola Policies was conducted has any bearing on the claims asserted by LKI in this suit, all of which relate to the Block Policies. Insurers deny the truth of the remaining allegations in paragraph 141.

142. Insurers deny the truth of the allegations in paragraph 142, and, responding further, incorporate by reference their answer to paragraph 141.

143. Insurers deny the truth of the allegations in paragraph 143.

144. Insurers deny the truth of the allegations that they were in breach or engaged in any wrongful conduct with respect to LKI's claim. Responding further, Insurers admit that,

in or about December 2009, LKI threatened Insurers with a lawsuit and claims for consequential damages, and deny that paragraph 144 accurately described the threat or the demand, or the merits of any of those matters.   Insurers deny the truth of the remaining allegations in paragraph 144.

145.   Insurers admit that an agreement between the parties is reflected in the Interim Agreement, and amendments thereto, which is an integrated document.   Responding further, Insurers incorporate the full terms and conditions of the Interim Agreement as amended and their answers to paragraphs 40-43.   Insurers deny the truth of any remaining allegations in paragraph 145 inconsistent with the foregoing.

146.   Insurers admit that an agreement between the parties is reflected in the Interim Agreement, and amendments thereto, which is an integrated document.   Responding further, Insurers incorporate the full terms and conditions of the Interim Agreement as amended and their responses to paragraphs 40-43, and 145.   Insurers deny the truth of any remaining allegations in paragraph 146 inconsistent with the foregoing.

147.   Insurers admit that they, along with LKI, entered into an Interim Agreement as of December 31, 2009 and an amendment thereto as of February 24, 2010, which provided for a payment and certain other consideration in exchange for undertakings by LKI, including a waiver of any claims it might attempt to assert for consequential damages. Responding further, Insurers incorporate by reference the full terms and conditions of the Interim Agreement, as amended and their responses to paragraphs 40-43.

148.   Insurers deny the allegations in paragraph 148 inasmuch as LKI has, among other things, breached its undertaking that the Interim Agreement did not establish any position or

agreement as to coverage, and its undertaking not to pursue claims for consequential damages, thereby improperly seeking benefit from the Interim Agreement without fulfilling its obligations thereunder.

149.    Insurers admit that the quoted language appears in the Interim Agreement (without emphasis) and, responding further, incorporate by reference the full terms and conditions of the Interim Agreement, as amended, including provisions explicitly and specifically stating: "[T]his Interim Payment shall not be construed as an admission of coverage" and "Underwriters reserve their right to disclaim coverage pursuant to the terms and conditions of its contract of insurance."

150.    Insurers admit that the quoted language appears in the Interim Agreement (without emphasis) and, responding further, incorporate by reference the full terms and conditions of the Interim Agreement, as amended, including a definition of the term "Insured Interest" to mean "those interests defined as 'Insured Interest' in the Global Policies" and a further provision that "Except as otherwise specifically set forth therein, this Agreement does not modify, alter or amend the Global Policies."

151.    Insurers admit that the quoted language appears in the Interim Agreement and, responding further, incorporate by reference the full terms and conditions of the Interim Agreement, as amended, including LKI's representation and warranties (certain of which are contradicted by LKI's pleading), as well as the provisions explicitly and specifically stating: "[T]his Interim Payment shall not be construed as an admission of coverage" and "Underwriters reserve their right to disclaim coverage pursuant to the terms and

conditions of its contract of insurance."   Insurers deny the truth of the remaining allegations of paragraph 151.

152.   Insurers admit that the quoted language appears in the Interim Agreement and, responding further, incorporate by reference the full terms and conditions of the Interim Agreement, as amended, to confirm that Insurers have the right to make reasonable inquiry and audit any submission to determine whether it meets sue and labor requirement, as well as the terms, conditions and limitations of the Block Policies.

153.   Insurers admit that the Interim Agreement, as amended, embodies the parties' agreement with respect to a May 3, 2010 date for addressing coverage issues and, responding further, incorporate the full terms and conditions of the Interim Agreement, as amended. Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 153.

154.   Insurers admit that LKI participated in meetings with certain counsel for Insurers regarding its claim on or about January 14, 2010, along with accountants from RGL, and that LKI provided certain documents during those meetings that it had not previously submitted.  Insurers deny the truth of remaining allegations in paragraph 154.

155.   Insurers admit that LKI participated in meetings with certain representatives of Insurers regarding its claim on or about January 14 and 27, 2010.  Insurers deny the truth of the remaining allegations in paragraph 155.

156.   Insurers deny the truth of the allegations in paragraph 156.

157.    The first two sentences of paragraph 157 contain generic exposition, legal argument and conclusion that do not require a response. To the extent a response is required, Insurers admit that there is a voluntary Kimberley Process Certification Scheme ("KPCS"). As to the third and fourth sentences, Insurers admit that, in the course of seeking to support its claim, LKI provided copies of certain KPCS certificates. Insurers admit further that they requested all documentation and other sources of information bearing on LKI's claim and its burden to establish physical loss or damage to its insured property. Insurers deny the truth of the remaining allegations of paragraph 157.

158.    Insurers admit that on or about February 8, 2010, LKI submitted a set of documents consisting of heavily redacted bills, most of which were for counsel including LKI's counsel-of-record in this suit, which LKI characterized as Sue and Labor expenses. Insurers deny the truth of the remaining allegations of paragraph 158.

159.    Insurers admit that the Interim Agreement was amended by an Amendment for Interim Payment executed on February 24, 2010 (the "Amendment"). The Amendment is in writing and speaks for itself. Insurers deny the truth of the remaining allegations of paragraph 159.

160.    Insurers admit that they requested interviews with representatives from law firms and advisers to describe the work they were doing for LKI, which could not be determined from the billing submissions that LKI provided to Insurers. Insurers admit further that LKI said it would arrange these interviews when convenient to the vendors and that LKI did not provide the interviews until weeks later. Insurers admit further that they asked LKI many times to provide information explaining its submission, and offered to review

the submission line by line, and that LKI did not do so.  Insurers deny the truth of the remaining allegations of paragraph 160.

161.    Insurers deny the truth of the allegations in paragraph 161.

162.    Insurers admit that they continued to investigate LKI's claim during the period from February through April 2010.

163.    Insurers admit that LKI invited lawyers with the firm of Wade Clark Mulcahy to attend meetings in 2010 that LKI was having with certain individuals in Antwerp and with certain individuals in Dubai.  Insurers deny the remaining allegations of paragraph 163.

164.    Insurers deny the truth of the allegations in paragraph 164.

165.    Insurers deny the truth of the allegations in paragraph 165.

166.    Insurers admit that Messrs. Moryto, Wade and Scott were in Dubai on or about March 9, 2010 and discussed the information being sought and materials reviewed at that time and location.  Insurers deny that, as alleged, the parties discussed other topics pertaining to the claim.

167.    Insurers incorporate by reference their answer to paragraph 166 and admit that Scott prepared a report shortly after the March 2010 trip to Dubai, which is in writing and speaks for itself.  Insurers deny the truth of the remaining allegations in paragraph 167.

168.    Insurers admit that the reasonable incurred and supported portions of LKI's Sue and Labor submission were paid on or about March 17, 2010, under the Interim Agreement, as amended, and deny the truth of the remaining allegations in paragraph 168.

169.     Insurers admit that there was correspondence between counsel in March and April 2010 that repeatedly offered to meet with LKI or to consider any other type of support LKI would offer for payment greater than the amount already paid. Insurers deny that they breached any obligation under the Interim Agreement with respect to the Sue and Labor submission or otherwise, and deny the truth of the remaining allegations in paragraph 169.

170.     Insurers admit that the reasonable incurred and supported portions of LKI's Sue and Labor submission were paid. Responding further, Insurers deny the truth of the remaining allegations in paragraph 170 and incorporate by reference their written response to LKI's Sue and Labor submissions.

171.     Insurers admit that Excess Insurers did not make a payment on LKI's Sue and Labor submissions, deny the allegation that those insurers subscribing to the Excess Policy are jointly and severally liable with those insurers subscribing to the Primary Policy, deny that the Excess Insurers have any obligation to pay LKI Sue and Labor expenses under the Excess Policy, and deny the truth of the remaining allegations in paragraph 171.

172.     Insurers deny the truth of the allegations in paragraph 172 and, responding further, incorporate by reference their written responses to LKI's Sue and Labor submissions and their answers to paragraphs 150, and 168-171.

173.     Insurers deny the truth of the allegations in paragraph 173 and, responding further, incorporate by reference their correspondence dated May 3, 2010, which LKI alleges in paragraphs 51 and 175 was a determination with respect to coverage.

174.    The first sentence of paragraph 174 contains legal arguments and conclusion to which no response is required.  To the extent a response is required, Insurers deny that they had an obligation under New York law to respond to an incomplete claims submission.  As to the second sentence of paragraph 174, Insurers admit that the Interim Agreement, as amended, is in writing and speaks for itself with respect to the parties' obligations to be fulfilled by May 3, 2010 and incorporate the full terms and conditions of that agreement and their answer to paragraph 51.  Responding further, deny the truth of the remaining allegations in the second sentence of paragraph 174.

175.    Insurers admit that they sent two letters to LKI dated May 3, 2010, addressing coverage under the Primary Policy and Excess Policy, respectively and incorporate by reference that correspondence, which is in writing and speaks for itself.  Responding further, Insurers deny the truth of the remaining allegations in paragraph 175.

176.    Insurers deny the truth of the allegations in paragraph 176.

177.    Insurers admit that LKI failed to make required financial reporting filings and, as a result was delisted by AMEX, and, responding further, deny that LKI's failure to make required financial reporting was the result of any conduct by Insurers and, responding further, deny that the parties contemplated at the time of contracting incorporating such risks as the potential consequence of an insurance claim under the Global Policies.  Insurers deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 177 and, responding further, deny that any such circumstances were the result of any conduct by Insurers and deny that the parties contemplated at the

time of contracting incorporating such risks as the potential consequence of an insurance claim under the Global Policies.

178.   Insurers admit that LKI has made filings with the SEC from September 2009 through the date of this pleading representing that it has been unable to obtain an unqualified audit report with respect to the company's financial statements for the fiscal year ended May 31, 2009 and, responding further, deny any remaining allegations in paragraph 178.

179.   Insurers admit that Form 10-K filings with the SEC require audited financial statements. Insurers deny knowledge or information sufficient to form a belief as to the requirements of the unidentified loan documents referenced in paragraph 179.

180.   Insurers admit that on September 15, 2009 LKI filed an announcement with the SEC, which is public and which speaks for itself and, responding further, deny allegations in paragraph 180 inconsistent with that filing. Responding further, Insurers incorporate by reference their answer to paragraph 133.

181.   Insurers admit that on August 31, 2010 LKI filed an announcement with the SEC, which is public and which speaks for itself and, responding further, deny allegations in paragraph 181 inconsistent with that filing. Responding further, Insurers incorporate by reference their answer to paragraph 133.

182.   Insurers deny the truth of the allegations in paragraph 182.

183.   As to the first sentence of paragraph 183, Insurers deny the truth of the allegations. As to the second sentence of paragraph 183, Insurers admit that the American Stock Exchange removed LKI's common share stock from trading on the Exchange effective August 11,

2010.  As to the third sentence of paragraph 183, on the current record Insurers deny knowledge or information sufficient to form a belief as to the allegations.  Responding further, Insurers incorporate by reference their answer to paragraph 133.

184.    Insurers deny knowledge or information sufficient to form a belief as to the allegations in paragraph 184.

185.    Insurers incorporate their response to paragraph 186, below, and deny knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 185.

186.    Insurers admit on January 5, 2010, LKI filed materials with the SEC stating that ADB provided notice on or about December 30, 2009 of ADB's intention to terminate a credit facility it had granted to LKI, and further stating that LKI "sharply disputes ADB's claim that it has the right under the Credit Agreement to terminate the $45M Facility at this time" and that LKI "expects to be in discussions with ADB to amicably resolve these matters." Responding further, Insurers deny knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 186.

187.    Insurers deny knowledge or information sufficient to form a belief as to the allegations in paragraph 187.

188.    Insurers deny knowledge or information sufficient to form a belief as to the allegations in paragraph 188.

189.    Insurers deny the truth of the allegations in paragraph 189.

190.    Insurers deny that any harm alleged is the result of any action by Insurers and, responding further, deny knowledge or information sufficient to form a belief as to the allegations in paragraph 190.

191.    Insurers deny knowledge or information sufficient to form a belief as to the allegations in paragraph 191, which, in any event, are so vague as to preclude a meaningful response.

192.    Insurers admit that LKI submitted a Sue and Labor claim in February 2010 and a second Sue and Labor claim in April 2010, which are in writing and speak for themselves, and that Insurers have paid the portion of those expenses qualifying.  Insurers deny the remaining allegations in paragraph 192.

193.    Insurers deny that any reputational damage alleged is the result of any action by Insurers and, responding further on the current record incorporate their answer to paragraph 133, and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 193, which, in any event, are so vague as to preclude a meaningful response.

194.    Insurers deny that any lost benefit alleged is the result of any action by Insurers and, responding further on the current record, deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 194 as LKI has not provided any documentation or support on these points.  Responding further, the allegations in paragraph194 are so vague as to preclude a meaningful response.

195.    Insurers deny that any purchase or pricing issues alleged are the result of any action by Insurers and, responding further on the current record, deny knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in paragraph 195 as LKI has provided no documentation or support on these points. Responding further, the allegations in paragraph 195 are so vague as to preclude a meaningful response.

196.  Insurers deny that any alleged shut-down of LKI's Puerto Rico operations are the result of any action by Insurers and, responding further on the current record, deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 196 as LKI has provided no documentation or support on these points.

197.  Insurers deny that any alleged downscale of LKI's operations in its Black Empowerment venture in South Africa are the result of any action by Insurers and, responding further on the current record, deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 197 as LKI has provided no documentation or support on these points.

198.  Insurers deny than any alleged inability to extend contracts for ventures in Russia are the result of any action by Insurers and, responding further on the current record, deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 198 as LKI has provided no documentation or support on these points. Responding further, the allegations in paragraph 198 are so vague as to preclude a meaningful response.

199.  Insurers deny that any alleged increase in insurance premiums or change in scope of coverage are the result of any action by Insurers and, responding further on the current record, deny knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 199 as LKI has provided no documentation or support on these points.

200.     Insurers deny that any termination of workforce or salary reductions alleged are the result of any action by Insurers, and, responding further on the current record, deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 200 as LKI has provided no documentation or support on these points and the allegations in paragraph 200 are so vague as to preclude a meaningful response.

201.     Insurers repeat and reincorporate their responses to paragraphs 1 through 200 (inclusive) as though set forth fully herein.

202.     Paragraph 202 contains legal argument and conclusions to which a response is not required. To the extent an answer is required, Insurers admit that the quoted phrases appear in the Block Policies, deny that the excerpts accurately summarize the full terms, conditions and limitations of the Block Policies and incorporate by reference the full terms, conditions and limitations of the Block Policies and the parties' negotiations of and agreements about these placements.

203.     Paragraph 203 contains legal argument and conclusions to which a response is not required. To the extent a response is required, Insurers admit that LKI has submitted certain documentation and deny the truth of the remaining allegations in paragraph 203.

204.     Insurers deny the truth of the allegations in paragraph 204.

205.     Insurers admit that LKI disagrees with the positions taken by the Insurers pursuant to the Primary Policy and the Excess Policy and elected to file suit rather than addressing the

points raised by Insurers in their May 3, 2010 correspondence and/or supplementing the claim with new documentation or support. Insurers admit further that LKI created a controversy with them by filing this suit. Insurers deny any allegations in paragraph 205 that are inconsistent with the foregoing.

206. Insurers admit that LKI's inaccurate and unfounded statements in the Third Amended Complaint require court intervention and that a declaration of rights is required with respect to Primary Policy, the Excess Policy, and the Interim Agreement. Insurers deny any allegations in paragraph 206 inconsistent with the foregoing.

207. Insurers deny that any remedies in favor of LKI are warranted and, responding further, state that LKI is seeking remedies for certain of the same claims it asserts here in litigation against Angola Policies insurers underway in England, and in Belgium against the entities it claims are responsible for the diamonds-at-issue.

208. Paragraph 208 does not contain factual allegations and requires no response. To the extent a response is required, Insurers acknowledge that paragraph 208 recites what LKI seeks and denies that any such relief is appropriate.

209. Insurers repeat and reincorporate their responses to paragraphs 1 through 208 (inclusive) as though set forth fully herein.

210. Insurers incorporate by reference the full terms of the Interim Agreement, as amended, which is in writing and speaks for itself, and their answers to paragraphs 146-152. Insurers deny any remaining allegations in paragraph 210.

211.  Insurers admit that they take the position that, under the Interim Agreement, LKI waived its right to seek consequential damages, deny the truth of the allegation that Insurers failed to meet the express conditions of the Interim Agreement, and deny any remaining allegations in paragraph 211.

212.  Insurers deny the allegation that they failed to meet conditions precedent in the Interim Agreement and deny that LKI's contentions to the contrary have merit.

213.  Insurers admit that LKI has, by its claims and allegations in the Third Amended Complaint which breach the Interim Agreement, created an actual controversy between Insurers and LKI with respect to the parties' rights and obligations under the Interim Agreement.  Insurers deny the truth of any remaining allegations in paragraph 213 inconsistent with the foregoing.

214.  Insurers admit that LKI's improper and incorrect allegations in the Third Amended Complaint require court intervention and that a declaration of rights is required with respect to Primary Policy, the Excess Policy, and the Interim Agreement, all of which are subject to exclusive jurisdiction in New York.  Insurers deny the truth of any remaining allegations in paragraph 214 inconsistent with the foregoing.

215.  Insurers deny that any remedies in favor of LKI are warranted and state that LKI is seeking remedies for certain of the same claims it asserts here in litigation against the insurers subscribing to the Angola Policies underway in England, and in Belgium against the entities LKI claims are responsible for diamonds-at-issue.

216.   Paragraph 216 does not contain factual allegations and requires no response. To the extent a response is required, Insurers acknowledge that paragraph 216 recites what LKI seeks and denies that any such relief is appropriate.

217.   Insurers repeat and reincorporate their responses to paragraphs 1 through 216 (inclusive) as though set forth fully herein.

218.   Paragraph 218 contains legal argument and conclusions that do not require a response. To the extent a response is required, Insurers deny the truth of the allegations in paragraph 218.

219.   Insurers admit that LKI has provided certain documentation and deny the truth of the remaining allegations in paragraph 219.

220.   Insurers deny the truth of the allegations in paragraph 220.

221.   Insurers deny the truth of the allegations in paragraph 221 and, responding further, state that LKI's attempted use of the Interim Agreement as an acknowledgement of coverage is contrary to the express terms of that agreement, and incorporate by reference the full terms and conditions of the Interim Agreement, as amended.

222.   Insurers deny the truth of the allegations in paragraph 222.

223.   Insurers deny the truth of the allegations in paragraph 223.

224.   Insurers deny the truth of the allegations in paragraph 224.

225.   Insurers admit that LKI was, at the time the Block Policies were placed, a publicly-traded company, and deny the remaining allegations in paragraph 225.

226. Insurers admit that LKI threatened, in or about December 2009, to commence suit and seek consequential damages if it did not receive a substantial interim payment prior to December 31, 2009, and that LKI received and accepted such a payment in consideration of the undertakings it subsequently breached by the allegations made in this litigation. Responding further, Insurers deny the allegation that they wrongfully failed to acknowledge coverage and deny the truth of the remaining allegations in paragraph 226.

227. Insurers deny the truth of the allegations in paragraph 227.

228. Insurers deny the truth of the allegations in paragraph 228.

229. Insurers deny the truth of the allegations in paragraph 229.

230. Insurers deny the truth of the allegations in paragraph 230 and, responding further, incorporate by reference the Insurers' correspondence of May 3, 2010 and the report of Mr. Scott, as well as LKI's allegations in paragraphs 51 and 175 that the May 3, 2010 correspondence was a determination with respect to coverage.

231. Insurers deny the truth of the allegations in paragraph 231.

232. Insurers deny the truth of the allegations in paragraph 232.

233. Insurers deny the truth of the allegations in paragraph 233.

234. Insurers deny the truth of the allegations in paragraph 234.

235. Insurers deny the truth of the allegations in paragraph 235.

236. Insurers deny the truth of the allegations in paragraph 236.

237.   Insurers repeat and reincorporate their responses to paragraphs 1 through 236 (inclusive) as though set forth fully herein.

238.   Insurers deny the truth of the allegations in paragraph 238.

239.   Insurers deny the truth of the allegations in paragraph 239.

240.   Insurers deny the truth of the allegations in paragraph 240.

241.   Insurers deny the truth of the allegations in paragraph 241.

242.   Insurers deny the truth of the allegations in paragraph 242.

243.   Insurers deny the truth of the allegations in paragraph 243.

244.   Insurers deny that they acted in bad faith or that LKI has made allegations sufficient to sustain a bad faith claim under New York law.  Responding further, Insurers deny that they reached any determination to deny coverage prior to the time that a determination with respect to coverage was to be made under the Interim Agreement, and state that their May 3, 2010 statement concerning coverage cited LKI's own representations that it was not insuring Angola buying and trading operations under the Block Policies and invited LKI to explain why that statement was not relevant to the claim it was pursuing under the Block Policies for Angola buying and trading operations.  Insurers further deny that their investigator recognized LKI's alleged losses, and deny that Insurers encouraged LKI to incur additional expenses unrelated to its obligations as claimant.  As to the allegations in this paragraph concerning the Angola Policies (which LKI re-labels here as "U.K. Policies"), Insurers incorporate their answer to paragraphs 44 and 141, LKI's

representation in Court that it is not seeking to litigate in this issue with respect to the Angola Policies, and the Court's ruling that they do not belong in this case.  Insurers deny the truth of any remaining allegations in paragraph 244 inconsistent with the foregoing response to paragraph 244.

245.    Insurers admit that LKI was a publicly-traded company in 2009, and, responding further, admit that LKI threatened, in or about December 2009, and that LKI received and accepted such a payment in consideration of the undertakings it subsequently breached by the allegations in this litigation.    Responding further, Insurers deny the allegation that LKI was entitled to any amounts not paid under the Block Policies and deny the truth of the remaining allegations in paragraph 245.

246.    Insurers admit that LKI threatened, in or about December 2009, to commence suit and seek consequential damages if it did not receive a substantial interim payment prior to December 31, 2009, and that LKI received and accepted such a payment in consideration of undertakings that it subsequently breached by the allegations made in this litigation. Responding further, Insurers deny the allegation that insurers wrongfully failed to acknowledge coverage under the Block Policies, and deny the truth of the remaining allegations in paragraph 246.

247.    Insurers deny the truth of the allegations in paragraph 247.

248.    Insurers deny the truth of the allegations in paragraph 248.

249.    Insurers deny the truth of the allegations in paragraph 249.

250. Insurers repeat and reincorporate their responses to paragraphs 1 through 249 (inclusive) as though set forth fully herein.

251. Insurers admit that LKI and Insurers entered into a Confidentiality Agreement, which is in writing and speaks for itself and, subsequently, have entered into a Confidentiality Stipulation in this case. Insurers deny the remaining allegations in paragraph 251 inconsistent with the foregoing.

252. Insurers deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 252.

253. Insurers deny that LKI has accurately quoted from the Confidentiality Agreement and incorporate the full terms and conditions of that Agreement and their answer to Paragraph 51.

254. Insurers admit that the quoted language appears (without emphasis) in a May 3, 2010 letter on behalf of Primary Policy Insurers, and deny that the quoted language constitutes a "conclusion of Underwriters' evaluation of the Losses" as referenced in the Confidentiality Agreement. Responding further, Underwriters incorporate their answer to paragraph 51.

255. Insurers admit that, on or about May 5, 2010, LKI requested production of the signed Non-Disclosure Agreements held in escrow and deny that such a request called for the requested action. Responding further, Insurers incorporate by reference their answer to paragraph 51 and LKI's inconsistent allegation in paragraph 173.

256. Insurers incorporate their answers to paragraphs 51, 254 and 255.

257.    Insurers deny the truth of the allegations in paragraph 257.

258.    Insurers deny that LKI has accurately quoted from the Confidentiality Agreement and, responding further, incorporate the full terms and conditions of the Confidentiality Agreement.

259.    Insurers deny the truth of the allegation that Insurers have breached the Confidentiality Agreement and deny that any remedy in favor of LKI, whether at law or otherwise, is warranted.

260.    Paragraph 260 does not contain factual allegations and requires no response.  To the extent a response is required, Insurers acknowledge that paragraph 260 recites what LKI seeks and denies that any such relief is appropriate.

261.    Paragraph 261 and the subsequent requests for relief do not contain factual allegations and require no response.  To the extent a response is required, Insurers acknowledge that paragraph 261 and the requests for relief recite what LKI seeks and deny that any such relief is appropriate.

## ADDITIONAL DEFENSES

Without assuming any burden of proof that properly sits with another party, Insurers assert the following additional defenses:

1.    The doctrine of "unclean hands" bars the equitable relief LKI seeks in the Third Amended Complaint.

2.    LKI failed to satisfy conditions precedent and to meet its other obligations necessary to establish and support a valid claim under the Primary Policy and/or the Excess Policy.

3.     To the extent LKI continues to assert in the Third Amended Complaint rights to recover in this action on the basis of its argument that Gulfdiam is an affiliate insured under the Block Policies, or otherwise reserves the right to seek in this action any recovery on behalf of or in the name of any other non-party entity, LKI failed to join necessary and indispensable parties to this litigation.

4.     Components of the Third Amended Complaint fail to state a claim on which relief may be granted to LKI.

5.     LKI waived or is estopped from asserting the claims made in the Third Amended Complaint for consequential loss.

6.     LKI waived or is estopped from asserting the claims made in the Third Amended Complaint for consequential, extra-contractual, or such other claims as may sound in tort or any other legal theory for any matter other than such policy indemnity as LKI alleges exceeds the amount of the Interim Payment under the Interim Agreement.

7.     LKI and certain non-parties LKI has identified in its Third Amended Complaint are seeking to recover for the same losses alleged here in other suits and through other dispute resolution mechanisms; LKI is estopped from seeking any double recovery with respect to its alleged losses.

8.     To the extent the Third Amended Complaint continues to make implicit or explicit allegations concerning conduct under or with respect to the Angola Policies, which LKI re-labels as "U.K. Policies," such claims are barred by the exclusive jurisdiction clause in the Angola Policies, by LKI's representations in Court, and by the Court's order directing that the Angola Polices be removed from the pleadings LKI has filed or will file in this case.

9.     The representations made by LKI, and relied upon by Insurers, at the time the Primary Policy and the Excess Policy were negotiated about the scope of insurance sought and the values submitted directly contradict the positions LKI now advances in submitting its insurance claim to the Block Policies and in pursuing those claims in the Third Amended Complaint.   Those representations preclude coverage for Angolan rough buying and trading operations or, alternately, constitute material misrepresentations or estoppel precluding LKI from now asserting inconsistent positions to the detriment of Insurers.

10.     Despite repeated requests for timely submissions, LKI withheld elements of its claim and did not present them until the second half of April 2010, days before the date when Insurers were to provide their decision on those matters.   LKI is estopped by this conduct from positions advanced in the Third Amended Complaint, including but not limited to LKI's assertion that all of its claims were timely notified and presented.

11.     LKI alleged for the first time in its Second Amended Complaint that LKI was pursuing a claim under the Fidelity section of the Primary Policy.   LKI was asked during the claim investigation whether it was making claim under that section and did not respond or otherwise attempt to meet the requirements set forth in that section of the Primary Policy, including time within which such a claim must be made.   LKI's Fidelity assertions in the Third Amended Complaint do not satisfy those requirements and cannot be a basis for sustaining any element of relief sought in this action.   Moreover, LKI's Fidelity assertions in the Third Amended Complaint are inconsistent with its claims that those same losses are covered under other provisions of the Block Policies.

12.    Insurers acted at all times reasonably and in accordance with the law, and without willfulness, malice, gross negligence, or reckless disregard for the rights of others and, under New York law, cannot be held liable on the basis alleged by LKI.

13.    LKI's claims for consequential damages are precluded by the fact that (i) LKI and its broker represented in negotiating the Primary Policy and the Excess Policy that Angola rough buying and trading operations were not valued or insured under the Block Policies and any consequential damages relating to that risk were not in the contemplation of the parties, (ii) LKI acknowledged in public filings that it its rough diamond trading business was heavily affected by factors having nothing to do with its insurance claim against the Primary Policy and the Excess Policy, (iii) LKI expressly waived those claims under the Interim Agreement and could not have expected any such recovery, and/or (iv) state and federal law and constitutional standards prohibit the type of extra-contractual damages that LKI seeks in this case.

14.    Liability has not attached under the Excess Block policy.

15.    LKI has never provided information to the Excess Insurers or alleged a set of facts in the Third Amended Complaint that a covered loss occurred of insured property at a Named Location in the Excess policy.

16.    LKI has never provided information to Excess Insurers or alleged in the Third Amended Complaint that a covered loss of insured property at a Named Location exceeds the applicable limits of liability of the Primary Block policy.

17.    Insurers reserve the right to raise any other additional defense that cannot now be reasonably determined or which may become available during future proceedings in this case.

## COUNTERCLAIMS

For its Counterclaims against Plaintiff/Counterclaim Defendant LKI, Defendants/Counterclaim Plaintiffs Insurers, by their undersigned attorneys, allege as follows. Except as expressly modified below, the capitalized terms in this Counterclaim are those that appear in the Insurers' foregoing Answer to LKI's Third Amended Complaint.

### PARTIES

1.     Defendant/Counterclaim Plaintiff Swiss Re underwrote a share of the primary and excess insurance policies that are the subject of this lawsuit, and is not domiciled in New York or in the U.S.

2.     Defendants/Counterclaim Plaintiffs certain underwriters at Lloyd's denominated Syndicates 1414, 2488, 3210 ,457, 2001, and 1084 underwrote shares of the primary and/or excess insurance policies that are the subject of this lawsuit, and are not domiciled in New York or in the U.S.

3.     Defendant/Counterclaim Plaintiff Marine underwrote shares of the excess insurance policy that is a subject of this lawsuit, and is not domiciled in New York or in the U.S.

4.     Plaintiff/Counterclaim Defendant LKI is a Delaware corporation based in New York City.

### JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this Counterclaim pursuant to 28 U.S.C. § 1332 based on the diversity of citizenship of the parties, and the fact that the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.     Venue is proper in this Court with respect to the subject matter of this Counterclaim pursuant to 28 U.S.C. § 1391.

**FACTS**

7.    LKI and the Insurers entered into an Agreement for Interim Payment effective as of December 31, 2009, which was subsequently amended in certain respects from inception by an Amendment to Agreement for Interim Payment signed on February 24, 2010.  The Agreement for Interim Payment, as amended, is referred to in these counterclaims as the Interim Agreement.

8.    The Interim Agreement arose out of LKI's request to the Insurers in December 2009 for a cash advance on a commercial basis prior to completion of the Insurers' investigation.  The Insurers agreed to fund a $28 million payment in exchange for a set of agreements and undertakings by LKI.  These undertakings include:

    a.    LKI's acknowledgement that the Interim Agreement applies to "Insured Interest" as that term was defined in the Primary Policy and the Excess Policy.

    b.    LKI's acknowledgement that the Interim Agreement applies through a "Termination Date," defined to mean the date any litigation between the parties was terminated by final appeal or the date a policy release was given by LKI for the Primary Policy or the Excess Policy.

    c.    LKI's representation and warranty that it was the owner of, or was otherwise contractually responsible for, the Insured Interest for which it was making claims and that it was entitled to recover those claims.

    d.    LKI's recognition that the Interim Agreement did not modify, alter or amend the Primary Policy or the Excess Policy unless such an amendment was specifically set forth in the Interim Agreement.

e.     LKI's agreement that that Underwriters reserved and did not waive any rights and

that the Interim Agreement was not, under any circumstances, an admission of coverage. The

Interim Agreement states:

> 11.     In advancing such Interim Payment, Underwriters do not
> waive any of their rights or privileges under the [Primary Policy or
> the Excess Policy.]  Underwriters reserve their right to disclaim
> coverage pursuant to the terms and conditions of [their] contract of
> insurance.  Further, this Interim Payment shall not be construed as
> an admission of coverage under the [Primary Policy or the Excess
> Policy].

f.     LKI's agreement that nothing contained in the Interim Agreement nor the Interim

Agreement itself would constitute an admission of wrongdoing, liability or coverage or have any

bearing on or relevance to the interpretation or meaning of the Primary Policy or the Excess

Policy, and that the Interim Agreement would not be admissible in any proceeding except to

enforce such terms.  The Interim Agreement states:

> **NO ADMISSION**
> 20.     Nothing contained in this Agreement, nor the Agreement
> itself, shall be admissible in any proceedings between the Parties,
> except to enforce the terms hereof.  Nothing contained in this
> Agreement shall be deemed to constitute an admission of
> wrongdoing or liability by the Parties, or coverage under the
> [Primary Policy or the Excess Policy] issued by Underwriters.
> This Agreement does not constitute, and shall not be construed to
> reflect, the adoption of any coverage position by the Parties, nor
> will it have any bearing upon or relevance to the interpretation or
> meaning of the terms, definitions, conditions or exclusions
> contained in any policies of insurance.  This Agreement does not
> reflect upon the Parties view as to rights and obligations with
> respect to matters or persons outside the scope of this Agreement. .
> . .

g.     LKI's agreement to make a submission of "Sue and Labor claims under" the

Primary Policy and the Excess Policy, to permit insurers to "review and audit such submission"

with respect to the "Interest Insured" under those policies.  The right of audit included request

for documentation and "to make reasonable inquiries through other reasonable means."  Insurers

would pay "Sue and Labor to the extent the submission qualifies" under the policies for that purpose. Interim Agreement, ¶14.

      h.    LKI's agreement to waive all rights to pursue Insurers for any form of consequential, extra-contractual indemnity or other claims. The Interim Agreement states:

> 13.    In consideration of the Interim Payment, the payment of the amounts of Sue and Labor and the commitments to reach a decision by May 3, 2010 whether there is coverage for the Claims and if so, the amount of the payment for the same, LKI hereby agrees to waive al rights at law, equity, or otherwise to pursue against Underwriters any claims for consequential, extra-contractual, or such other claims as may sound in tort or any other legal theory, and hereby agrees to pursue only such policy indemnity as exceeds the amount of the Interim Payment made hereunder. For the avoidance of doubt, there can be no claim against Underwriters for consequential loss.

9.    Insurers have complied with their obligations under the Interim Agreement. Insurers timely paid LKI the Interim Payment and the amount of Sue and Labor submission that qualified as Sue and Labor under the Primary Policy and the Excess Policy. Further, the Insurers provided to LKI no later than May 3, 2010 a detailed written statement with respect to the claim submitted by LKI and the coverage and quantum positions that could be determined based on what LKI had provided.

10.    LKI has not met its obligations under the Interim Agreement, which contains the following cost of enforcement agreement:

> **COSTS OF ENFORCEMENT**
> 27.    In the event of any dispute between the Parties regarding the enforcement of this Agreement or any provision hereof, the Party prevailing in such dispute shall be paid all of its fees and costs, including attorney fees related to such dispute.

## COUNT I – ENFORCEMENT OF THE INTERIM AGREEMENT

11.     Insurers incorporate paragraphs 1-10 of the Counterclaims and repeat and reallege those matters.

12.     LKI's Third Amended Complaint repeatedly violates the terms of the Interim Agreement in the following respects:

     a.     Asserting that provisions in the Interim Agreement constitute or reflect the adoption of a coverage positions. *See e.g.*, Third Amended Complaint, ¶¶ 41, 45, 149, 150, 151, 175, 221;

     b.     Asserting that provisions in the Interim Agreement bear upon or have relevance to the interpretation or meaning of the Primary Policy and the Excess Policy or LKI's claims under those policies. *See, e.g.*, Third Amended Complaint, ¶¶ 41, 45, 149, 150, 151;

     c.     Asserting that provisions in the Interim Agreement establish that Insurers have not reserved and/or have waived their rights to disclaim coverage under the Primary Policy and the Excess Policy. *See, e.g.*, Third Amended Complaint, ¶¶ 175, 221;

     d.     Asserting that the provisions in the Interim Agreement are an admission of wrongdoing and/or liability. *See e.g.*, Third Amended Complaint, ¶¶ 175, 221; and

     f.     Asserting claims against Insurers for consequential, extra-contractual, and other theories that LKI expressly waived under the Interim Agreement. *See, e.g.*, Third Amended Complaint, ¶¶ 226, 227, 235, 236, 246, 247, 249.

13.     LKI's breaches of the Interim Agreement give rise to a justiciable controversy between the parties and require this counterclaim to enforce the Interim Agreement and to strike the allegations and claims identified above from the Third Amended Complaint.

14.     Insurers are entitled under the Interim Agreement to appropriate judicial relief, including without limitation (i) a declaration that LKI is in breach of the Agreement, (ii) an order striking LKI's allegations and claims in breach of the Interim Agreement, and (iii) an award of such additional relief as is just and proper, including Insurers' attorneys fees, other fees, and costs related to this dispute.

### COUNT II – RECISSION OF THE INTERIM AGREEMENT

15.     Insurers incorporate paragraphs 1-14 of the Counterclaims and repeat and reallege matters stated therein.

16.     If the relief requested in Count I above is not granted, and if LKI is allowed to plead and maintain the allegations and claims in the Third Amended Complaint that are in violation of the terms of the Interim Agreement, then there will have been a failure of consideration by LKI and LKI will have frustrating the Interim Agreement's essential purpose and rendering it a nullity, and further will have materially and willfully breached the terms of the Interim Agreement.

17.     In that event, Insurers are entitled to rescission of the Interim Agreement or to equivalent judicial remedies and seek relief including without limitation: (i) a declaration that LKI's Third Amended Complaint (a) repudiates the Interim Agreement and that the Interim Agreement's essential purpose has been frustrated, rendering it a nullity, (b) reflects a failure of consideration with respect to the Interim Agreement, and (c) constitutes a material and willful breach of the Interim Agreement; (ii) an order directing LKI to return to the Insurers all payments made to LKI

under the Interim Agreement; and (iii) an award of such additional relief as is just and proper, including interest and reliance damages to be shown at the time of trial.

WHEREFORE, having fully answered Plaintiff's Complaint and set out their Counterclaims against Plaintiff, Insurers ask that judgment be entered against Plaintiff and in favor of Insurers on all of LKI's Claims, that the relief requested in Insurers' Counterclaims be granted, that Insurers be awarded their costs and expenses incurred herein, and that the Court grant such other and further relief as the Court deems just and appropriate.

Dated: March 1, 2011

Respectfully submitted,

Benjamin A. Fleischner (BAF-7006)
Jonathan S. Chernow (JSC-7339)
WHITE FLEISCHNER & FINO LLP
61 Broadway, 18th Floor
New York, New York 10006
Tel: (212) 487-9700
Fax: (212) 487-9777

Attorneys for SWISS RE INTERNATIONAL SE/ SR INTERNATIONAL BUSINESS INSURANCE COMPANY LIMITED and CERTAIN UNDERWRITERS AT LLOYD'S (Syndicates 1414, 1084), and THE MARINE INSURANCE COMPANY LIMITED as respects the Excess Policy

To: See attached affidavit